## CONTRACTS OF GUARANTY.

[Circuit Court of Lucas County.]

NATIONAL BANK OF COMMERCE v. FRANK W. GARN ET AL.

Decided, February 7, 1902.

*Guaranty—Rule for Construction of Contracts of—Presumption against a Continuing Guaranty—Subsequent Transactions not Amounting to a Modification of—Payments of Later Loans—How to be Credited—Estoppel.*

1. A contract of guaranty is to be given that construction and effect which best accords with the apparent intention of the parties as manifested by the terms of the guaranty, taken in connection with the subject matter to which it relates and the circumstances accompanying the whole transaction, and should be construed as are all other contracts with the purpose of giving effect to the intention of the parties, and without straining the instrument beyond its obvious meaning for the purpose of enlarging the liability of the guarantors.

2. Where there is still doubt as to whether the guaranty was intended to be a continuing guaranty, the presumption is that it was not so intended, and this presumption may be given effect.

3. Subsequent transactions under or in pursuance of the contract, or with the contract in view, may be looked to for the purpose of discerning the interpretation the parties have themselves put upon its doubtful provisions.

4. The guaranty in suit, which was by individual stockholders for the benefit of the corporation, should be restricted to the first $3,000 loaned, and not held to be a continuing guaranty.

5. While estoppel may arise as to guarantors who solicited further loans for the corporation and are claiming to be entirely relieved from liability therefor, the terms of the original guaranty are not thereby extended.

6. A bank is at liberty to make further loans to the party for whose benefit the guaranty was given and to discharge them without reference to the loans for which the guarantors became bound, and as a matter of law payments made upon subsequent loans need not be credited back upon the loans guaranteed.

PARKER, J.; HAYNES, J., and HULL, J., concur.

Heard on error.

In the court of common pleas suit was brought by this plaintiff in error against this defendant in error, upon a certain writ-

ten guaranty. A general demurrer to the second amended petition was sustained by the court; and the plaitniff, not desiring to plead further, judgment went against him, dismissing his petition, and adjudging the costs against him, and on account of that judgment he prosecutes error here.

So that it will be seen, the question is presented here, as it was below, upon the demurrer to the second amended petition. The question is whether the court erred in sustaining that demurrer. I do not know that it would be safe to undertake to paraphrase or abbreviate this petition. It is not very long, and I shall read it. (After the title.)

"The plaintiff, The National Bank of Commerce of Toledo, Ohio, a corporation organized under the banking laws of the United States, and doing business at Toledo, Ohio, for its cause of action against the said defendants, Frank W. Garn, Oliver B. Snider, Martin C. Trout and Andrew D. Stewart, says that on the tenth day of June, 1895, said defendants executed and delivered to the Ketcham National Bank of Toledo, Ohio, a written undertaking, a copy of which is as follows:

"TOLEDO, OHIO, June 10, 1895.
"Ketcham National Bank:
"We, the undersigned, hereby jointly and severally guarantee to you the payment of any and all sums of money that may be loaned by you to the Carothers Publishing Company, on request of F. W. Garn, treasurer, providing the amount of said loan shall not exceed in the aggregate $3,000.

"F. W. GARN,
"O. B. SNIDER,
"M. C. TROUT,
"A. D. STEWART.

"Plaintiff says that subsequent to the execution and delivery of said guaranty, the Ketcham National Bank of Toledo, Ohio, changed its name to The National Bank of Commerce of Toledo, Ohio, under the provisions of the statutes of the United States; that the said Carothers Publishing Company, subsequent to the execution and delivery of said guaranty, changed its name to the Royal Publishing Company, under the provisions of the statutes of the state of Ohio; that said plaintiff is still the owner and holder of said contract; that subsequent to the execution and delivery of said contract the Ketcham National Bank loaned to the Carothers Publishing Company, on

request of F. W. Garn, treasurer, the following sums of money on the following dates, to-wit:

"September 13, 1895, $2,800; October 11, 1895, $3,800; April 22, 1897, $500; July 31, 1897, $600; August 8, 1897, $500.

"Plaintiff says that at the time said guaranty was given and said sums of money loaned as aforesaid, all said defendants were stockholders in said company; that the defendants, Frank W. Garn, Martin C. Trout and Oliver B. Snider, were members of the board of directors of said company and constituted a majority of said board, and were actively interested in the business in which said company was engaged. That the said defendant, Frank W. Garn, at the time said guaranty was given and said money loaned, was treasurer and general manager of said company, and in full charge of its business, subject to the general supervision and control of said board of directors. That each and all of said defendants authorized the said F. W. Garn, as manager and treasurer of said company, to borrow of the plaintiff the aforesaid amounts and executed the said notes therefor; that at said time he and all of said defendants knew that said authorized loans were in excess of said $3,000; that all of said loans were so obtained by said company upon statements made by said treasurer showing that said company was financially solvent; that said statements were made by the authority and with the knowledge of said defendants and for the express purpose of procuring said loans in excess of said $3,000, and said loans were so made by said plaintiff relying upon the truthfulness thereof. The plaintiff says that said statements were false, and said company was at said times actually insolvent.

"That said defendant, Andrew Stewart, was a regular attendant on all stockholders' meetings and knew the condition of said company, and knew that said company borrowed money from the plaintiff in the amounts above set forth, and in excess of said sum of $3,000 and authorized the same.

"Plaintiff says that said sums of money loaned as above stated were secured by the several promissory notes of said company; that said notes were given for short periods of time and successfully renewed; that payments were made by said company on said notes thus renewed up to the —— day of September, 1898, on which date the following notes given by said company to secure said indebtedness were outstanding and unpaid, to-wit:

"Note of $475 dated July 2, 1898, due in ninety days.

"Note of $3,200 dated July 9, 1898, due in ninety days.

"Note of $2,200 dated July 19, 1898, due in ninety days.

"Note of $550 dated August 24, 1898, due in ninety days.

"Plaintiff further says that on or about the —— day of September, 1898, R. E. Rickenbaugh was appointed receiver by this court for the purpose of closing up the business in which said company was engaged; and that thereafter R. W. Kirkley was appointed receiver by this court for the purpose of collecting from stockholders of said company the amounts due from them by reason of their liability as stockholders of said company under the statutes of Ohio.

"Plaintiff says that its claim against said company, by reason of said indebtedness, was approved in said proceedings heretofore had in this court, and said claim was allowed, with interest to January 31, 1899, in the sum of $6,538.82. Plaintiff says that it has received from R. E. Rickenbaugh, receiver, the sum of $879.79, and from R. W. Kirkley, receiver, the further sum of $3,961.32, and which said sums were applied by plaintiff in payment of said loans so made as aforesaid in excess of said $3,000, the amount named in said guaranty executed by said defendants, and the balance of said payments were applied upon the indebtedness secured by said guaranty; and that there is still due and unpaid on said guaranteed indebtedness the sum of $1,697.71, with interest from January 3, 1899, for which amount plaintiff prays judgment against said defendants."

Now, the questions debated and to be decided turn upon the construction to be given to this written guaranty, and perhaps somewhat upon the transactions of the parties averred to have taken place in pursuance of the guaranty or subsequent to the guaranty.

It was contended on behalf of plaintiff in error that this is a continuing guaranty, which authorized the bank to loan to the company whatever it might please to loan without limit as to time or amount, but that the limit of the liability of the guarantors (being the only limit) was fixed at $3,000; and that therefore the guarantors would be liable to the extent of $3,000 for any balance remaining unpaid upon any loan or loans that might be made at any time or in any amounts subsequent to the execution and delivery of this guaranty.

On the other hand, it is contended that this is not a continuing guaranty, but is restricted; that it contains a condition that the amount of said loan or the aggregate of all loans, should not exceed $3,000, and that the violation of this authority would of itself operate to release the guarantors from all

liability; and that if this is not true, it is at least true that the guarantors have not authorized a succession of loans exceeding in the aggregate $3,000, and have not agreed that they would be bound for any unpaid balance upon said loans, but that the restriction is that they will be bound for the first loan or loans aggregating three thousand dollars, and that any payments made upon that loan or which should be applied upon that loan in extinguishment of it, would extinguish their liability; and that there would be no liability attaching to them on account of subsequent loans.

By the diligence of counsel, we have been cited to a very great many authorities, which state principles and give illustrations bearing upon the questions in issue. It would be an almost endless task to review these authorities, and perhaps impossible to reconcile them, but we think that running through the approved authorities, there are certain principles about which there is no very great difference in the minds of the courts—certain well defined principles which may be applied here to a solution of these questions.

In the first place as to the general rule of construction. A contract of guaranty is to be given that construction and effect which shall best accord with the apparent intention of the parties as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates and the circumstances accompanying the whole transaction. And in that respect it does not differ from any other contract. It is to be construed as any other contract should be construed, the purpose being to ascertain the intention of the parties, and to give that effect.

The guarantors should be held to every obligation reasonably and fairly embraced within the terms of their contract, construed in the light of the language used and the concomitant circumstances, but the instrument should not be strained beyond its obvious meaning for the purpose of enlarging the liability of the guarantors.

After the application of these general rules, where there is still doubt whether the guaranty was intended to be a continuing guaranty, the presumption that it was not so intended may

be given effect, and may turn the scale. That there is such presumption and that it has been recognized and approved as a rule by the Supreme Court of this state, appears from *Birdsall* v. *Heacock,* 32 Ohio St., 177. The question was whether a certain guaranty given by a father on account of his son authorizing the sale of lumber to the son should be regarded and enforced as a continuing guaranty or as a restricted guaranty. The syllabus reads:

"A letter addressed to a lumber merchant in the following language: 'Please send my son the lumber he asks for, and it will be all right,' is a guaranty that the lumber sold and delivered to the son, at the time of its presentation, will be paid for.

"But such guaranty is not continuing, so as to make the guarantor liable for lumber subsequently purchased by the son from the same merchant. And payments afterward made by the principal, on account, will be applied in satisfaction of the first purchase, and consequent discharge of the guarantor's liability."

In the course of the opinion, Judge Scott, after discussing the question whether this should be regarded as a continuing or restricted guaranty, uses this language:

"Upon this subject, it has been well said, that 'the chief difficulty lies in determining what interpretation should be put on a guaranty which is so worded that it may either extend to a series of sales or advances or be limited to the first. The better opinion would seem to be, that such an instrument should be confined to the immediate transaction, unless the language of the promise is sufficiently broad, to show that it was meant to reach beyond the present, and render the guarantor answerable for future credits. The tendency of decision in this country has, accordingly, been against construing guaranties as continuing, unless the intention of the parties is so clearly manifested as not to admit of a reasonable doubt."

The language is quoted from 2 Am. Lead. Cas., 141, and a large number of cases are there cited in support of it.

It will be observed that this petition does not set forth the circumstances surrounding the transaction, the concomitants of the transaction, further than to state that these persons were members of this incorporated company, some being directors,

and one the treasurer and general manager, and then it proceeds to state what was subsequently done in the way of making loans to the company through this treasurer and general manager, upon the authority of the board of directors. Now, subsequent transactions, not amounting to a modification of the contract and not part of the concomitant circumstances, can not be considered as a part of the circumstances under consideration in formulating the terms of the contract, and hence be looked to for the purpose of ascertaining the sense in which or the intent with which such terms were used.

Counsel for plaintiff in error cites us to *Cambria Iron Co.* v. *Keynes,* 56 Ohio St., 501, in which consideration was given by the courts, in construing a contract of guaranty, not to subsequent transactions between the principal and the person to whom the guaranty was extended, but the course of dealing which had previously gone on between the guarantor and the creditor; and the first clause of the syllabus reads:

"In construing a contract of guaranty, the object should be to ascertain the intention of the parties; and, as in construing all contracts, the words employed by the parties should be construed in the light afforded by the circumstances surrounding them at the time it was made."

The question there was as to the period of credit extended by the creditor. The previous course of dealing between the parties had been such that the period of credit did not exceed four months. Upon the note being executed and delivered into the hands of the creditor, further credit was given, and the time for the payment was extended, so that there became, not an extension of the time of giving credit by selling at a time subsequent to the time limited for giving credit, but an extension of time for payment upon the goods sold within the time limited, and it was with reference to that previous course of dealing as throwing light upon the sense in which certain terms were employed that averments were made and testimony heard —I do not know but that it went off on demurrer—but at all events, consideration was given to the course of dealing between the parties prior to and concurrently with the execution of the written guaranty.

That there was any course of dealing between the principal and the creditors in the case at bar which would authorize us to look into the transactions to ascertain the sense in which the terms of the contract were used by the parties, is not disclosed by this petition. So far as appears by the petition this was the very first transaction that had ever taken place between the parties.

However, subsequent transactions under or in pursuance of the contract, or with the contract in view, may be looked to for the purpose of discerning the interpretation the parties have put upon doubtful provisions; and in looking into the petition for this purpose we believe that we are authorized to say that by soliciting this further credit to the company, the guarantors, directors and others interested in the company, have put it out of their power, have perhaps estopped themselves from claiming that they have been totally relieved from all obligation in consequence of credit having been given beyond the $3,000 stated; but we do not think we are authorized to say that by so doing they have extended the terms of their guaranty so that they would be bound thereon as upon a continuing guaranty for any balance that may remain due upon credits given beyond $3,000. In other words, we can not say that the plain limitation restricting the amount of the first $3,000 loaned, was not waived or enlarged by the subsequent authority given to the treasurer to borrow money; though we hold that the making of further loans did not at once and of itself amount to such a violation of the contract as absolutely released them as guarantors. But there was no agreement at all that they would be bound beyond $3,000; and therefore, that matter stands as if they had said in effect, "you may make these further loans, but you do it, not upon the faith of our guaranty, but upon the faith and responsibility of the company."

We are of the opinion that under all of the circumstances set forth in the petition, the guarantors were not bound beyond the $3,000 first loaned. Now it appears from the petition that $3,000 and more was loaned, so that the guarantors became responsible to the extent of $3,000. It appears too that there is a balance due of $1,697.71; and plaintiff says that he has

applied the remainder upon the part secured, leaving this balance, as he claims, of unsecured indebtedness.

The question, therefore, left for our determination is, whether or not this petition discloses that the $3,000 first loaned has been paid. If the petition discloses that it has been paid, then it does not state any cause of action against the guarantors. It shows that there was a liability of $3,000, arising upon loans exceeding $3,000, *i. e.*, upon the first $3,000; and unless it discloses that this has been paid, there is a cause of action stated in the petition.

It was held in *Birdsall* v. *Heacock, supra*, that under circumstances like those there appearing, payments made by the principal on account will be applied in satisfaction of the first purchase, and the consequence will be a discharge of the guarantor's liability; and it is urged by counsel for defendants in error that the payments which have been made here from time to time in the various ways shown by the petition, should be so applied, in discharge of the guarantor's liability that, *as a matter of law*, they should and must be so applied; and that, notwithstanding the averments of the petition that they have been otherwise applied, the law will make the application in such a way as to work the discharge of the guarantors.

Whether the applications stated of these payments were made with or without authority from the principal debtor or guarantors is not stated in the petition. It is silent upon that subject. That the application has been made is all that is stated. I read on the subject of the application of payments, from an old edition of Brandt on Suretyship and Guaranty, Section 286:

"When the liability of a surety or guarantor is for the debt of another, such liability, of course, ceases upon the payment of the debt. With reference to the application of payments, the general and well known rule is, that a debtor who owes several debts to the same creditor has the right at the time of making a payment to apply it to any one of the debts as he pleases. If he makes no appropriation of a general payment, the creditor may apply it as he sees fit. And where it is not appropriated by either the debtor or the creditor, the law will apply it according to the justice and equity of the case. The mere fact that there is a surety for one of the debts will not

make any difference in this rule, when a payment is made in the principal, where the principal debtor pays part of the principal sum due, and the whole of a highly usurious rate of interest stipulated for, the surety is bound by this application of payment.  Where a mortgage or other security is given by a principal to secure several debts due one creditor, for one of which debts a surety is liable, and there is no agreement or anything to indicate the intent of the parties as to how the proceeds of the security shall be applied, the creditor may apply such proceeds to the payment of the debts, for which the surety is liable.  When three notes are secured by a trust deed, and the two first due are also signed by a surety, the creditor may, after the maturity of all the notes, apply the proceeds of the trust premises to the payment of the note last due, on which there is no surety.  The fact that he required sureties on the two first notes, was evidence that he was not satisfied with the security of the trust deed.  Principal and surety were liable for a debt, and afterwards the principal obtained further advances from the creditor, at the same time depositing with him certain copper to secure his indebtedness, but without specifying what indebtedness.  The principal failed, and the creditor, against the objection of the surety, applied the proceeds of the copper to the payment of the subsequent advances.  *Held:* He might lawfully do so.  As the principal made no application of the payment, the creditor had the right to apply it as he pleased, upon the ordinary principle which entitles a creditor in the absence of any direction from the debtor paying, to apply the money he receives  to whichever of several debts arising he pleases.''

Notwithstanding this limitation in this written guaranty, it was competent for the company to borrow money from the bank. It was competent for the bank to give credit to the company and competent for the company to discharge such indebtedness by paying it; and to pay it without reference to the fact that it was indebted to the bank upon certain other loans, on account of which these guarantors had become bound; and we hold that payments made by the debtor company to the bank on other loans would not necessarily, as a matter of law, be credited—would not be required to be credited—upon the loan on account of which these guarantors were bound.

The case differs somewhat from the case of a general open account, like that in *Birdsall* v. *Heacock, supra;* for the general

rule is that where there is a general open account, and payments are made thereon generally (as in that case), the application shall be made upon the oldest item of the account. We know of no reason why this debtor. company may not have gone to the bank and made any of these loans of hundreds and thousands of dollars and agreed to pay them, either at a date subsequent to that at which the first loan became due and payable, or at an earlier date, and actually have paid them when they matured or at some other time, without regard to the fact that there was another indebtedness existing upon which the guarantors were bound, and without offering such guaranty.

The petition discloses no direction from anybody as to the application to be made of payments, but states that payments were made and that the creditor bank applied the payments as stated, upon the unsecured indebtedness. It does not appear from the petition that the bank violated any rights of the guarantors in so doing. It is possible that it did. It is possible that some reason existed why those payments should have been applied and why a court of law or equity even now would require that they should be applied upon the first indebtedness; but that reason is not disclosed in the petition, and if it exists, it must be brought forward by an answer.

The petition sets forth that the debtor company failed; that the bank proved up its claim for $6,538.82 upon these several notes of $475, $3,200, $2,200, and $550 which were given in extension—or some of them were—of the balance due upon the first $3,000 borrowed, and upon the other amounts first borrowed, making up the $8,200. Of the property which went into the hands of the receiver of the company, the bank received as its distributive share, $879.79; of that which went into the hands of the receiver who was appointed in the proceedings to enforce statutory liability of the stockholders of the insolvent company, it received as its share upon these claims, the sum of $6,839.82.

The question arises whether the petition discloses a state of facts which would require the application of the money thus received in any particular way, or requires that it should go into any particular channel. We think it does.

In *Bank* v. *Cheney* (unreported), the court held that where there were various claims presented on behalf of the bank, upon some of which Mr. Cheney was surety, and upon others of which he was not, and there was a dividend paid to the bank upon their several claims, it was not competent for the bank to apply that dividend in such a way as to extinguish the unsecured claims presented and allowed, and leave the. claims upon which Mr. Cheney was surety without any payment having been made thereon. Our view of the matter, without any authorities being presented at that time, was that the different claims should *pro rate;* that the court had allowed these different claims, and that the dividends were upon the different claims, and that when the dividends were paid, the application should be made *pro rata* upon the different claims, and we enforced that rule. In looking into the case, we find authority in support of that ruling, although we found none at that time.

In 7 Bingham, 489, I read the syllabus:

"The defendant guaranteed plaintiffs against debts to be contracted by L. M. to the extent of 400 pounds. L. M. became indebted to plaintiffs to the amount of 625 pounds, upon which by a composition with his creditors, he paid them 8 shillings 7 cents on the pound, leaving due to the plaintiffs out of their whole claim 336 pounds. The defendants being sued for that sum upon their guaranty—*Held:* That they were entitled to deduct from it 171 pounds, 13 shillings and 4 pence, the amount of the dividend of 8 shillings 7 cents on the pound upon 400 pounds."

The matter is very well argued out by Kirdle, Chief-Justice, and the reasoning is very satisfactory to us. I do not take time to read it.

I call attention to another decision in line with that, in 5 Moore & P., 327. I will not stop to read it, but will simply say that the same doctrine is announced and applied.

So that we hold that the amounts received from these receivers upon this balance of indebtedness of nearly $5,000 should be applied *pro rata* upon the different claims presented and allowed; not only that received from the receiver of the insolvent company, but that received from the other receiver, who had collected from the stockholders on account of their statutory

liability. We do not understand that the latter fund should be treated differently from any other to which the creditors might resort. We do not understand that the bank had any peculiar or special interest in that fund that these guarantors can not as well assert for their benefit—that these guarantors would not be subrogated to in the event they discharged the indebtedness, and sought relief against the debtor; and therefore we hold that both of these funds should be treated, as a matter of law, as having been applied in that way.

Nevertheless, it is not apparent that that would extinguish this indebtedness. It might still leave a balance of the first $3,000 unpaid. That balance may turn out to be as great as the balance claimed in the petition, or it may be less, or there may be nothing remaining unpaid of the first $3,000 loaned. This may depend upon the amount, if anything, of the first $3,000 loaned carried into these renewal notes. The transaction in the way of loans and payments and applications of payments up to the making of these last notes, are not set forth specifically in detail, but the petition avers that there is a balance of the secured indebtedness carried into these renewal notes and yet unpaid, and therefore we are of the opinion that the petition states a good cause of action, and that the court of common pleas erred in sustaining this demurrer.

The judgment will be reversed and the cause remanded.

*E. W. Tolerton,* for plaintiff in error.

*G. P. Voorhees,* for defendant in error.